UNITED STATES of America, Appellee,

v.

Daniel CORE;  Jack Cruz, Defendants,

Javier Reyes, Defendant–Appellant.

No. 1649, Docket 96–1790.

United States Court of Appeals,
Second Circuit.

Argued June 5, 1997.

Decided Sept. 9, 1997.

Henriette D. Hoffman, New York City (The Legal Aid Society, New York City, Of counsel), for Defendant–Appellant.

Richard C. Daddario, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, New York City, Craig A. Stewart, Assistant United States Attorney, Of Counsel), for Appellee.

Before: MESKILL, JACOBS, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This appeal from a sentence imposed on resentencing raises the question whether the law forbids downward departure based on the defendant's conduct in prison while serving the sentence initially imposed. At his resentencing hearing, defendant Javier Reyes sought a downward departure based on evidence of his rehabilitation during his several years of incarceration. The United States District Court for the Southern District of New York (Charles S. Haight, Jr., *Judge*) declined to depart, not because it found departure unwarranted on the facts, but because it believed departure was forbidden in these circumstances.

We disagree with the district court's conclusion. We find nothing in the pertinent statutes or the Sentencing Guidelines that prevents a sentencing judge from considering post-conviction rehabilitation in prison as a basis for departure if resentencing becomes necessary. Accordingly, we remand for resentencing, so that the district court may consider whether the facts of this case warrant downward departure.

## Background

Javier Reyes was named as a defendant in an indictment filed in September 1991. Count One charged Reyes with conspiracy to distribute more than a kilogram of heroin, in violation of 21 U.S.C. § 846. Count Ten charged him with using and carrying a firearm during and in relation to the drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). Count Eleven charged him with possession of a firearm with an altered or removed serial number, in violation of 18 U.S.C. § 922(k).

Reyes entered into an agreement with the government to plead guilty to the charges of heroin distribution conspiracy and the related use of a firearm. The plea agreement provided that the conspiracy involved between 30 and 100 kilograms of heroin, resulting in a base offense level of 38. The agreement then provided for several reductions, in part for his minor role and acceptance of responsibility, producing an offense level of 32 on the narcotics count, which, given his criminal history, resulted in a sentencing range of 121–151 months. The agreement specified that Reyes would also be subject to a mandatory 60 month consecutive sentence for the gun conviction under Section 924(c)(1).

Reyes pleaded guilty under this agreement and was sentenced in November 1993 to 121 months imprisonment on the narcotics charge and also to the mandatory consecutive term of 60 months imprisonment on the firearms charge. At that time, Reyes's mandatory consecutive sentence for use of the gun under § 924(c)(1) precluded the imposition of a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a weapon in connection with the drug offense. *See*

U.S.S.G. § 2K2.4, comment. (n.7 & background); *United States v. Howard,* 998 F.2d 42, 48 (2d Cir.1993). Reyes was remanded into custody and began serving his term. We affirmed his conviction. *See United States v. Core,* 41 F.3d 1502 (2d Cir.1994).

In December 1995, the Supreme Court defined the "use" of a firearm under § 924(c)(1) in a manner inconsistent with our precedents. *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Reyes's guilty plea under that statute was predicated upon his acknowledgement that "[a]s part of those drug transactions I had a weapon available for protection. . . . This weapon was found in the trunk of a car that I was driving." Under *Bailey,* such possession did not constitute "use" for purposes of § 924(c)(1). *See Bailey,* —— U.S. at ——, 116 S.Ct. at 505.

Reyes thereafter moved *pro se* under 28 U.S.C. § 2255 to vacate his § 924(c)(1) conviction by reason of the *Bailey* ruling. The government conceded that *Bailey* required vacating Reyes's conviction on the weapons charge, but asked the court to resentence him on the heroin conspiracy count in order to impose the previously-prohibited upward adjustment under U.S.S.G. § 2D1.1(b)(1) for his possession of the weapon in connection with the drug offense. In October 1996, Judge Haight vacated the sentence and held that he had jurisdiction to resentence Reyes on the heroin count. *See Reyes v. United States,* 944 F.Supp. 260 (S.D.N.Y.1996).

Judge Haight ruled that the plea agreement "now binds neither party," and invited each side "to make such sentencing arguments as may be available." Judge Haight determined that a two-level enhancement for possession of a firearm was appropriate, and therefore increased Reyes's sentence level to 34.

Reyes contended that he should receive a downward departure for his post-conviction rehabilitative efforts during his incarceration. He proffered evidence of his rehabilitation in prison. Concluding that the court was "without power to make a downward deduction based upon good conduct in prison," Judge Haight refused to depart downward. He

then proceeded to resentence Reyes on the drug conspiracy conviction, increasing his sentence on that count from 121 to 151 months.

This appeal followed.

### Discussion

### I. Jurisdiction to Resentence

■ Reyes contends that the district court lacked jurisdiction to resentence him on the drug conspiracy conviction following the vacation of his conviction under Section 924(c)(1). We recently settled this question in *United States v. Gordils*, 117 F.3d 99 (2d Cir.1997), and *Rodriguez v. United States*, 116 F.3d 1002 (2d Cir.1997). In these cases we joined the vast majority of the circuits by concluding that "a district court does have jurisdiction under § 2255 to resentence a defendant on a related, unchallenged drug conviction when the defendant has successfully challenged his § 924(c) conviction pursuant to *Bailey*." *Gordils*, 117 F.3d at 99, 102. Specifically, we held that "the district court's power extends not just to the conviction attacked by the defendant but to 'an aggregate, indivisible term of imprisonment ....'" *Id.* (quoting *United States v. Binford*, 108 F.3d 723, 728 (7th Cir.)), *cert. denied*, —— U.S. ——, 117 S.Ct. 2530, 138 L.Ed.2d 1029. Because *Gordils* and *Rodriguez* make clear that the district court had jurisdiction to resentence Reyes on his conviction for conspiracy to distribute heroin, we affirm the district court's ruling on this question.

### II. Downward Departure for Post–Conviction Rehabilitation

■ Reyes argues that the district court was wrong in concluding that it had no legal authority to consider post-conviction rehabilitation in prison as a basis for downward departure. "[W]e review *de novo* the legal issue of '[w]hether a particular factor is a permissible ground for departure.'" *United States v. Williams*, 37 F.3d 82, 85 (2d Cir.

1994) (quoting *United States v. Mickens*, 926 F.2d 1323, 1332 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992)); *see also Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996) ("[W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point.").

■ The Sentencing Reform Act of 1984 (the "Act") invites the sentencing court to consider departure from the range provided by the Sentencing Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see also* U.S.S.G. Ch. 1 Pt. A, intro. comment. (4)(b). Furthermore, the Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate. *See* U.S.S.G. § 1B1.1(i). In making this inquiry, the sentencing court begins by considering whether some aspect of the case "take[s] it outside the Guidelines' 'heartland' and make[s] of it a special, or unusual, case." *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993) (Breyer, *C.J.*); *see also Koon*, —— U.S. at ——, 116 S.Ct. at 2045; *United States v. Merritt*, 988 F.2d 1298, 1306 (2d Cir.1993), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993).

Unless the Guidelines explicitly forbid departure, the sentencing court may depart from the guidelines range to take into account factors that the Sentencing Commission did not consider at all. The sentencing court may also depart, "even though the reason for departure is taken into consideration in the guidelines," if it finds that "in light of unusual circumstances, the guideline level attached to that factor is inadequate."[1] U.S.S.G. § 5K2.0, p.s. We noted in *Merritt* that "consideration of a factor by the Com-

---

1. *Cf.* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1735 (1992) ("'Adequately considered' provides the [Act's] pivotal test for guarding against ill-con-

ceived guidelines and against needless rigidity in applying an otherwise sensible guideline to cases in which the kind or degree of circumstances warrant departure.").

mission does not bar departure." *Merritt,* 988 F.2d at 1311. As the Guidelines state, "[w]ith ... specific exceptions ... the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch. 1 Pt. A, intro. comment. (4)(b). In short, absent express prohibition, a sentencing court "is free to consider, in an unusual case, whether or not the factors that make it unusual ... are present in sufficient kind or degree to warrant a departure." *Rivera,* 994 F.2d at 949.

We have previously found that the Guidelines did not adequately consider rehabilitation efforts undertaken at various times. For example, we concluded in *United States v. Maier,* 975 F.2d 944, 948 (2d Cir.1992), that a defendant's post-offense rehabilitation from narcotics addiction was a factor not adequately considered in the Guidelines, and thus was a permissible basis for a downward departure. We observed that "awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society," *id.,* can remove a case from the heartland of typical cases, thus constituting a valid basis for departure. *See also United States v. Workman,* 80 F.3d 688, 701 (2d Cir.1996) ("[P]ost arrest rehabilitation efforts by ... defendants may justify downward departures under appropriate circumstances."); *U.S. v. Rodriguez,* 724 F.Supp. 1118 (S.D.N.Y.1989).

We see no significant difference between the post-offense rehabilitation that we found in *Maier* to furnish a legallypermissible grounds for departure and rehabilitation achieved in prison between imposition of the original sentence and resentencing. When the trial court undertook to resentence Reyes after vacating his § 924(c)(1) conviction, it was required to consider him as he stood before the court at that time. Had Reyes, for example, rendered assistance to the government by cooperating since his initial sentence, we see nothing in the statutes or the Guidelines that would have precluded the court from taking that conduct into account under § 5K1.1. Likewise, if the defendant achieved a rehabilitation sufficiently impres-

sive to be considered "atypical" and to take his case out of the heartland, we see no reason why this should not be considered, as in *Maier,* a basis for departure. *See United States v. Williams,* 65 F.3d 301, 307 (2d Cir.1995) (affirming district court's authority to depart downwardly on resentencing because of defendant's drug rehabilitation efforts, including acceptance in a selective drug treatment program available only if the departure was granted).

The government contends that in formulating the Guidelines the Commission adequately considered a defendant's post-conviction rehabilitation. To demonstrate this "adequate consideration," the government relies principally on U.S.S.G. § 3E1.1(a), which permits a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). In rejecting a similar argument in *Maier,* we noted that "[t]o permit section 3E1.1 to serve as the Commission's adequate consideration of all mitigating post-offense conduct ... thereby precluding departures regardless of anything constructive that the defendant might do after his arrest that benefits himself, his family, or his community, undermines the statutory standard for departures, 18 U.S.C. § 3553(b), as well as the statutory requirement to consider the "characteristics of the defendant, *id.* § 3553(a)(1)." *Maier,* 975 F.2d at 948.

The government argues that, because of a 1992 amendment to the commentary to § 3E1.1, *Maier* is no longer controlling. This commentary provides a non-exclusive list of "appropriate considerations" for the sentencing court to use in determining whether the defendant is entitled to a reduction for acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n.1). In an amendment effective on November 1, 1992, after our decision in *Maier,* the Commission added to this list as a new "consideration," "post-offense rehabilitative efforts (*e.g.,* counseling or drug treatment)." U.S.S.G. § 3E1.1, comment. (n.1(g)). The government contends that the inclusion of post-offense rehabilitation as a factor relevant to the deduction for acceptance of responsibility con-

stitutes "adequate consideration" of such rehabilitation and precludes departure on that basis.

We see no indication that the Commission intended its mention of post-offense rehabilitation as one factor affecting acceptance of responsibility to preclude consideration of rehabilitation as a basis for departure. Acceptance of responsibility is easily achieved and is accordingly of relatively low value. Credit for acceptance of responsibility can be earned by any offender who admits the offense, pleads guilty, and is found not to have persisted in criminal conduct. *See* U.S.S.G. § 3E1.1, comment. (n.3). Defendants who accomplish a successful rehabilitation go far beyond what is required to qualify for the deduction under § 3E1.1. *See* Patricia H. Brown, *Considering Post–Arrest Rehabilitation of Addicted Offenders Under the Federal Sentencing Guidelines,* 10 Yale L. & Pol'y Rev. 520, 530 (1992).

Furthermore, the credit for acceptance of responsibility is of modest value to the defendant. It provides for a decrease of two levels, or three in certain circumstances for defendants whose offense level is 16 or greater. *See* U.S.S.G. § 3E1.1. Thus, for a defendant at level fifteen, it reduces the minimum sentence from eighteen to twelve months. For a defendant at level 25, the reduction is from fifty-seven to forty-six months, or forty-one if the defendant earns the extra point.

The successful rehabilitation of a criminal, on the other hand, is a valuable achievement of the criminal process. The Act recognizes this by requiring sentencing courts to consider "the need for the sentence imposed ... to provide the defendant with needed educational and vocational training ... or other correctional treatment...." 18 U.S.C. § 3553(a)(2)(D); *see Maier,* 975 F.2d at 946–47; *Williams,* 65 F.3d at 305.

The imbalance between the importance of the successful rehabilitation of a criminal offender and the relatively small significance attached to acceptance of responsibility suggests that the Commission did not intend its inclusion of rehabilitation as one factor bearing on acceptance of responsibility to bar departure based on successful rehabilitation. It also suggests that a highly successful rehabilitation is not taken into consideration appropriately ("in kind and degree") by the mention of rehabilitation as a factor affecting section 3E1.1.

The government appears to argue that, if a factor mentioned in the Guidelines can in any way benefit a defendant, it must be deemed an impermissible ground for departure. This is not the law. First, the Commission expressly stated that it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). Second, § 3553(b) makes clear that aggravating and mitigating circumstances can serve as the basis for departure unless they were adequately taken into consideration in kind and degree. For the foregoing reasons, we find that the inclusion of rehabilitation as a factor that may assist the defendant in obtaining a reduction for acceptance of responsibility under § 3E1.1 does not strip the district court of authority to consider whether the defendant's rehabilitation removes the case from the heartland so as to permit departure.

The government also argues that because 18 U.S.C. § 3624(b) makes an inmate's progress towards a high school degree a factor in determining his entitlement to good time credits, and because the Commission was presumably aware of this provision, such rehabilitative efforts received "adequate consideration" and cannot be a basis for departure. We agree that the Commission was presumably aware of § 3624(b). But it does not follow that the Commission intended to bar sentencing courts from considering rehabilitation in prison as a basis for departure. Furthermore, as good time credit under § 3624(b) ordinarily starts accruing during service of a sentence, *i.e.* after the imposition of the sentence, and the issue of departure arises at sentencing, there is little logical support for the inference that the Commission would have considered the means of earning good time credit relevant to the issues affecting what sentence would be imposed.

Finally, the government attempts to distinguish *Maier* by arguing that it concerned rehabilitation from drug addiction while this case does not. This argument misconstrues the role of departure under the Guidelines. The government's position seems to assume that departure is appropriate only with respect to specific and discrete categories of conduct expressly carved out by the Guidelines or by judicial opinions. The rule is quite the opposite. Unless departure is expressly forbidden by statute or the Guidelines, *see, e.g.,* U.S.S.G. §§ 5H1.4, p.s., 5H1.10, p.s., it may be considered in any circumstances not adequately taken into account in kind or degree by the Commission.

The government further argues that Reyes's rehabilitation has not been sufficiently impressive or extraordinary to serve as a basis for a downward departure. In *Williams,* we did emphasize that "the power to depart is to be used sparingly and is reserved for unusual cases," and that it is far easier to take "tentative step[s] towards rehabilitation" than to accomplish that goal. 65 F.3d at 305 (internal quotation marks omitted). While we adhere to that position, we have no reason at this point to evaluate whether Reyes's rehabilitative efforts were sufficient to justify departure. The district court declined to depart not because it found the efforts to be insufficient, but because it believed that good conduct in prison during service of a sentence could not, as a matter of law, justify departure. Our reversal of that ruling and remand for resentencing does not imply that Reyes's efforts and achievement were sufficient. We leave that question to be evaluated in the first instance by the sentencing court. *Cf. Koon,* —— U.S. at ——, 116 S.Ct. at 2046–2047 (discussing the district courts' "institutional advantage" in making evaluative decisions on the ordinariness of a particular factor); *United States v. Galante,* 111 F.3d 1029, 1034 (2d Cir.1997) (same).

### Conclusion

The amended sentence is vacated, and the case is remanded to the district court for consideration whether the defendant's steps towards rehabilitation warrant a downward departure.